UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------x
DYNAREX CORPORATION,                                        :
                Plaintiff,                :
                                                           :
v.                                                         :
                                                           :
RICHARD FARRAH; DOLORES MAZZA;                             :       **OPINION AND ORDER**
PROVIMED, INC.; YITZCHAK a/k/a ISAAC                       :
WOSNER; REBECCAH WOSNER; AMESCO                            :       18 CV 7072 (VB)
HOSPITAL SUPPLY CO.; BAYAMON                               :
HOSPITAL; SIDRA MEDICAL SUPPLY INC.;                       :
HECTOR OJEDA; IVAN OJEDA;                                  :
MUHAMMAD MOMEN; and JOHN DOES #1                           :
through #10,                                               :
                Defendants.               :
------------------------------------------------------------x

Briccetti, J.:

      Plaintiff Dynarex Corp. brings this action against (i) Richard Farrah; (ii) Dolores Mazza;

(iii) Provimed, Inc., Yitzchak a/k/a Isaac Wosner, and Rebeccah Wosner (the "Wosner

Defendants"); (iv) Amesco Hospital Supply Co., Bayamon Hospital, Hector Ojeda, and Ivan

Ojeda (the "Ojeda Defendants"); (v) Sidra Medical Supply Inc. ("Sidra") and Muhammad

Momen (the "Sidra Defendants"); and (vi) John Does #1 through #10.[1]

      Plaintiff, claiming defendants perpetrated mail and wire fraud, invokes the Racketeer

Influenced Corrupt Organizations Act ("RICO"), for alleged violations of 18 U.S.C. § 1962(c)

and (d). Plaintiff also brings state law claims against all defendants for fraud, unjust enrichment,

misappropriation of trade secrets, conversion, fraudulent misrepresentation, civil conspiracy, and

punitive damages.

---

[1]      None of the Ojeda Defendants has appeared in this case. In addition, Farrah has not answered, moved, or otherwise responded to the amended complaint.

Now pending are Mazza's, the Wosner Defendants', and the Sidra Defendants' motions to dismiss the amended complaint. (Docs. ##49, 60, 63).

For the following reasons, the motions are GRANTED.

## BACKGROUND

For the purpose of ruling on the motions to dismiss, the Court accepts as true all well-pleaded factual allegations in the amended complaint and draws all reasonable inferences in plaintiff's favor, as summarized below.

Dynarex manufactures and distributes medical and janitorial supplies. Farrah worked for Dynarex as a vice president of sales from 1994 to 2001, when he was terminated for theft. In 2004, Dynarex re-hired Farrah to the same position.

Starting in approximately June 2014, Farrah, together with his assistant Mazza, allegedly masterminded three schemes to defraud Dynarex.

First, Farrah and Mazza arranged for the sale of Dynarex products to defendants Provimed and Provimed CEO Yitzchak a/k/a Isaac Wosner at below-standard prices; the four defendants then split the savings, which were at least $713,352.00. Allegedly, the Wosner Defendants provided Farrah and Mazza with kickbacks in the form of "cash, negotiable instruments, luxury goods, payments of personal credit card bills and other means." (Doc. #43 ("Am. Compl.") at 14 ¶ 61).[2]

Dynarex's management caught on and began requiring Farrah to obtain purchase orders from Provimed, which Dynarex could then review to ensure appropriate pricing. Dynarex

---

[2] The amended complaint is improperly numbered: for instance, on page 12, paragraph 59 is followed by paragraph 51, and page 14 contains two paragraphs numbered 61. Thus, the Court will use the appellation, "Am. Compl. at __ ¶ __," referring to the page numbers automatically assigned by the Court's Electronic Case Filing system followed by the paragraph number in the amended complaint.

subsequently implemented stricter policies, requiring specific approval from its CEO for all Provimed sales. Farrah, Mazza, Provimed, and Mr. Wosner responded by creating fraudulent initial sales orders at authorized pricing and sending the fraudulent sales orders to Dynarex's CEO for approval; they would then retroactively lower the prices and add un-ordered items to the sales orders to hide the price reductions.

Second, Farrah allegedly conspired with the Sidra Defendants to steal nearly $70,000 of products from Dynarex's Rockland County warehouse, in return for which Farrah received kickbacks. Sidra was authorized to pick up pre-paid items from the warehouse. Farrah and the Sidra Defendants would add unauthorized items to the pickups and schedule Sidra's trucks to arrive when supervisors "would be less cognizant of the pick-up procedures." (Am. Compl. at 14 ¶ 65).

Third, Farrah allegedly conspired with the Ojeda Defendants "[o]n at least twenty-seven (27) occasions . . . to manipulate invoices and reduce them from standard pricing." (Am. Compl. at 14 ¶ 67). Farrah and the Ojeda Defendants then split the resulting $291,993 in savings.

Farrah was arrested in January 2018 and charged with second-degree larceny.

## DISCUSSION

I.    Standard of Review

In deciding a Rule 12(b)(6) motion for failure to state a claim, the Court evaluates the sufficiency of the operative complaint under the "two-pronged approach" articulated by the U.S. Supreme Court in Ashcroft v. Iqbal, 556 U.S. 662, 679 (2009). First, plaintiff's legal conclusions and "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements," are not entitled to the assumption of truth and thus are not sufficient to withstand a motion to dismiss. Id. at 678; Hayden v. Paterson, 594 F.3d 150, 161 (2d Cir. 2010).

Second, "[w]hen there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." Ashcroft v. Iqbal, 556 U.S. at 679.

To survive a Rule 12(b)(6) motion, the complaint's allegations must meet a standard of "plausibility." Ashcroft v. Iqbal, 556 U.S. at 678; Bell Atl. Corp. v. Twombly, 550 U.S. 544, 564 (2007). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. at 678. "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." Id. (quoting Bell Atl. Corp. v. Twombly, 550 U.S. at 556).

II.     RICO Enterprise

Plaintiff fails sufficiently to allege a RICO enterprise.

RICO Section 1962(c) provides:

> It shall be unlawful for any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity or collection of unlawful debt.

18 U.S.C. § 1962(c). Thus, to state a substantive RICO claim under Section 1962(c), a plaintiff must plead "(1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity." Sedima, S.P.R.L. v. Imrex Co., 473 U.S. 479, 496 (1985) (footnote omitted).

"The RICO statute defines 'enterprise' as 'any individual, partnership, corporation, association, or other legal entity, and any union or group of individuals associated in fact although not a legal entity.'" D'Addario v. D'Addario, 901 F.3d 80, 100 (2d Cir. 2018) (quoting

18 U.S.C. § 1961(4)).[3]  "[A]n association-in-fact enterprise is a group of persons associated together for a common purpose of engaging in a course of conduct."  Boyle v. United States, 556 U.S. 938, 946 (2009) (internal quotation omitted).  Courts expansively define the concept of an association-in-fact enterprise.  See id. at 944.

"[A]n association-in-fact enterprise must have at least three structural features:  a purpose, relationships among those associated with the enterprise, and longevity sufficient to permit these associates to pursue the enterprise's purpose."  Id. at 946.  Thus, courts examine (i) whether members of the alleged enterprise have interpersonal relationships, Elsevier Inc. v. W.H.P.R., Inc., 692 F. Supp. 2d 297, 306–07 (S.D.N.Y. 2010); (ii) where the members are located, and whether the complaint explains how they came to an agreement to act together or how they knew one another, id. at 307; (iii) whether the members are symbiotic—in other words, whether they depend on one another, act to benefit one another, or rely on one other's activities, City of New York v. Chavez, 944 F. Supp. 2d 260, 275 (S.D.N.Y. 2013), vacated on other grounds, City of New York v. Bello, 579 F. App'x 15, 18 (2d Cir. 2014) (summary order);[4] and (iv) whether the alleged predicate acts could be accomplished without the assistance of the other members of the alleged enterprise, Gucci Am., Inc. v. Alibaba Grp. Holding Ltd., 2016 WL 6110565, at *7 (S.D.N.Y. Aug. 4, 2016).

"Proof that several individuals, independently and without coordination, engaged in a pattern of crimes listed as RICO predicates, is not enough to show that the individuals were members of an enterprise."  D'Addario v. D'Addario, 901 F.3d at 101 (internal quotation and

---

[3]     Plaintiff argues only that defendants constitute an association-in-fact enterprise, and not that defendants are a legal entity constituting a RICO enterprise.

[4]     Defendant Farrah, who is proceeding pro se, will be provided copies of all unpublished opinions cited in this decision.  See Lebron v. Sanders, 557 F.3d 76, 79 (2d Cir. 2009).

alterations omitted) (collecting cases). Thus, there is no RICO association-in-fact in "rimless hub-and-spoke conspiracies," in other words, "when each defendant is alleged to have a relationship with a central figure, but the defendants are not all alleged to be connected in some overarching way (such as by an agreement to further a single design or purpose"). Id. (internal quotations omitted).

Here, plaintiff alleges a classic rimless hub-and-spoke conspiracy. Plaintiff alleges facts suggesting the Wosner Defendants, Sidra Defendants, and Ojeda Defendants each joined with Farrah (and in the case of the Wosner Defendants, also with Mazza) to perpetrate a separate scheme to defraud Dynarex. The amended complaint does not merely suggest so—it outright says so. (Am. Compl. at 9 ¶ 40 ("The pattern of racketeering activity committed by the Defendants . . . involved separate – albeit related – schemes with various participants.")).

Moreover, plaintiff's allegations of relationships among the Wosner Defendants, Sidra Defendants, and Ojeda Defendants are entirely conclusory. (See Am. Compl. at 8 ¶ 36 ("The Co-Defendants (both corporate and private) knew one another from various professional contexts and maintained an intricate relationship with one-another"), ¶ 37 ("Upon information and belief, the Enterprise (and its members) function as an inter-connected unit"); 10 ¶ 44 ("Upon information and believe [sic], the corporate Co-Defendants and their owners/employees maintained a relationship of interconnectedness enabling them to perpetuate unlawful and fraudulent activities.")). Indeed, there are no factual allegations suggesting the Wosner Defendants, Sidra Defendants, and Ojeda Defendants—who are variously located in Brooklyn, Long Island, Florida, and Puerto Rico—were even aware of each other's existence. Cf. Elsevier Inc. v. W.H.P.R., Inc., 692 F. Supp. 2d at 307 (holding plaintiff failed to allege association-in-

fact enterprise when complaint did not explain how defendants located in Long Island, Hudson Valley, Indiana, and Massachusetts, had interpersonal relationships).

Finally, there are no allegations the Wosner Defendants, Sidra Defendants, and Ojeda Defendants were symbiotic: the amended complaint does not allege they depended on one another, acted for one other's benefit, or relied on one another. And the amended complaint suggests each scheme could have been accomplished without the assistance of the other members of the alleged enterprise.

Accordingly, plaintiff's Section 1962(c) RICO claim is dismissed.

III.    RICO Conspiracy Claim

Because plaintiff fails to state a substantive RICO claim, plaintiff's RICO conspiracy claim necessarily fails. First Capital Asset Mgmt. v. Satinwood, Inc., 385 F.3d 159, 182 (2d Cir. 2004).

IV.    State Law Claims

Having dismissed all claims over which it has original jurisdiction, the Court declines to exercise supplemental jurisdiction over any state law claims asserted in the amended complaint. See 28 U.S.C. § 1367(c)(3).

Plaintiff's state law claims are dismissed without prejudice.

V.    Leave to Amend

The Court granted plaintiff leave to amend after the Wosner Defendants, moving to dismiss, raised substantially the same arguments at issue in the instant motions. (Doc. #38). Plaintiff then filed the amended complaint, which failed to address the deficiencies raised in the Wosner Defendants' initial motion. A plaintiff's "failure to fix deficiencies in the previous pleading, after being provided notice of them, is alone sufficient ground to deny leave to amend."

Jeanty v. Newburgh Beacon Bus Corp., 2018 WL 6047832, at *12 (S.D.N.Y. Nov. 19, 2018) (collecting cases), appeal docketed, No. 18-3677 (2d Cir. Dec. 10, 2018).

Further, plaintiff has not requested leave to amend. "[N]o court can be said to have erred in failing to grant a request that was not made." Gallop v. Cheney, 642 F.3d 364, 369 (2d Cir. 2011).

Accordingly, the Court declines to grant plaintiff leave to file a second amended complaint.

## CONCLUSION

The motions to dismiss are GRANTED.

The Clerk is instructed to terminate the motions (Doc. ##49, 60, 63) and close this case.

Dated: May 28, 2019
　　　　White Plains, NY

SO ORDERED:

Vincent L. Briccetti
United States District Judge